UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-713-BR

| | | |
|---|---|---|
| CHLOE J. SMITH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NORTH CAROLINA DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, | ) | |
| Defendant. | ) | |

This matter is before the court on defendant North Carolina Department of Health and Human Services' ("NCDHHS") motion for summary judgment. (DE # 69.) Plaintiff filed a response and memorandum in opposition to the motion. (DE ## 71, 72.) NCDHHS did not file a reply brief, and the time within which to do so has expired. This matter is therefore ripe for disposition.

## I.     BACKGROUND

Since 2004, NCDHHS has employed plaintiff as an Office Assistant IV. (Garcia Aff., DE # 69-5, ¶ 21; Def.'s Ex. 2, DE # 69-7.) Prior to 2008, plaintiff worked on the Work First ("WF")/Child Protective Services ("CPS") team within the Child Welfare Services ("CWS") section of NCDHHS. (Kelley Aff., DE # 69-3, ¶ 14.) In late 2008, some of the teams within CWS, including the WF/CPS team, were realigned. (Id. ¶¶ 9, 11.) The WF program moved out of CWS, and CPS was combined with another team. (Id. ¶ 11.) The Interstate Compact for Placement of Children ("ICPC") program became its own team in CWS. (Id. ¶ 12.) Plaintiff remained in her Office Assistant IV position but was moved to the ICPC team. (Id. ¶ 17.) Her compensation has never been decreased, (Sanders Aff., DE # 69-4, ¶ 14; McNeill Aff., DE # 69-2, ¶ 38), and she remains in the Office Assistant IV position, (Garcia Aff., DE # 69-5, ¶¶ 21, 34).

In late 2009 (effective 2010), plaintiff's work schedule changed from an alternative or flexible schedule (having one weekday off per week) to a traditional five-day work week. (McNeill Aff., DE # 69-2, ¶ 27; Am. Compl., DE # 54, at 17; Pl. Dep., DE # 72-6, at 112.) In 2011, plaintiff and her supervisor (and others) had discussions about plaintiff's job description, (McNeill Aff., DE # 69-2, ¶¶ 17, 18), specifically about "updating her job description to reflect her duties with the ICPC team," (id. ¶ 17). In August 2011, plaintiff met with her supervisor and the CWS section chief about her revised job description. (Id. ¶ 19; Kelly Aff., DE # 69-3, ¶ 19.) Plaintiff did not agree with the revised job description and was directed to sign it and provide an addendum specifying any corrections she thought were needed and any additional duties she thought should be included. (McNeill Aff., DE # 69-2, ¶ 22; Kelly Aff., DE # 69-3, ¶ 19; Pl. Dep., DE # 72-6, at 85.) Subsequently, plaintiff apparently submitted a signed addendum. (Garcia Aff., DE # 69-5, ¶ 11; see also Pl. Dep., DE # 72-6, at 85-86.) Plaintiff and management never came to a consensus about her job description. (Pl. Dep., DE # 72-6, at 90.)

From the time she began her employment with NCDHHS until her mother died in 2014, plaintiff cared for her mother who had dementia. (Pl. Dep., DE # 72-6, at 116-17, 122.) Plaintiff's supervisors were aware of this fact. (Id. at 117; see also McNeill Dep., DE # 69-2, ¶ 34.)

On 7 March 2012, plaintiff filed a charge of discrimination with the North Carolina Office of Administrative Hearings and the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Ex. 23, DE # 69-37.) In that charge, plaintiff claimed NCDHHS had discriminated against her in violation of the Americans with Disabilities Act of 1990 ("ADA") based on her association with an individual with a disability. (Id.) The EEOC issued plaintiff a notice of right to sue on 31 July 2012. (Compl., Attach., DE # 54, at 6.) On 30 October 2012,

2

plaintiff filed an application to proceed *in forma pauperis*, which the court subsequently allowed, and plaintiff's complaint was filed. On 25 July 2013, the court granted in part and denied in part the motion to dismiss filed by the individual defendants plaintiff had sued and allowed plaintiff's motion to amend the complaint to add NCDHHS as the defendant. After discovery concluded, on 3 December 2015, NCDHHS filed the instant motion for summary judgment.

## II. DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue of material fact exists, the Court views the evidence in the light most favorable to the non-moving party." Martin v. Lloyd, 700 F.3d 132, 135 (4th Cir. 2012) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

NCDHHS argues that plaintiff's claims are barred because she did not exhaust her administrative remedies and she did not timely file her charge of discrimination as to acts which occurred more than 300 days prior to her charge.

> Before filing a discrimination suit alleging violations of the . . . ADA, an individual must file a charge of discrimination with the EEOC, pursuant to the same powers, procedures, and remedies applied to Title VII claims. Therefore, "[a]n individual cannot bring suit [under the . . . ADA] until he has exhausted [the] administrative process."

Byington v. NBRS Fin. Bank, 903 F. Supp. 2d 342, 348 (D. Md. 2012) (citations omitted) (alterations in original). The failure of a plaintiff to exhaust her administrative remedies deprives the federal court of subject matter jurisdiction over the claim. Jones v. Calvert Grp.,

Ltd., 551 F.3d 297, 300 (4th Cir. 2009).

> The scope of the federal suit, however, is determined by, and limited to, the contents of the administrative charge. . . .
> To determine whether a suit exceeds the scope of the administrative charge, the Court considers whether the Complaint contains "those discrimination claims stated in the initial charge, those reasonably related to [that charge], and those developed by reasonable investigation [of that charge]." Moreover, discrete discriminatory acts may not be considered by the Court if they occur outside of the 300–day limitations period.[1]

Byington, 903 F. Supp. 2d at 349 (citations omitted) (alterations in original); see also Gilliam v. S. Carolina Dep't of Juvenile Justice, 474 F.3d 134, 139 (4th Cir. 2007) ("Any subsequent complaint in federal court can only be premised on acts of discrimination that occurred within the applicable limitations period. Any discrete acts of discrimination that occurred prior to the applicable limitations period are procedurally barred and cannot be used as a basis for recovery." (citations omitted)).

In regards to subject matter jurisdiction, plaintiff points to the fact that the court earlier denied defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and that she has alleged federal claims for discrimination, which constitute a federal question under 28 U.S.C. § 1331. (Mem., DE # 72, at 3.) Plaintiff is correct that in ruling on the motion to dismiss, the court concluded that plaintiff had alleged sufficient facts to support a claim for associational discrimination under the ADA against NCDHHS. She is also correct that this court has federal question jurisdiction over such a claim under § 1331. However, the court only has jurisdiction over those claims plaintiff has administratively exhausted, and at the time the court disposed of the motion to dismiss, the record did not contain a copy of plaintiff's charge of discrimination. Now, with the charge before it, (Def.'s Ex. 23, DE # 69-37), the court is able to

---

[1] A party must file a charge with the EEOC within 180 days after the alleged unlawful employment practice, except in cases "when state law proscribes the alleged unlawful employment practice and the charge has initially been filed with a state deferral agency," the period is extended to 300 days. Jones, 551 F.3d at 300 (internal quotation marks and citation omitted). NCDHHS concedes that the 300-day period applies here. (See Mem., DE # 68, at 12.)

fully evaluate the claims stated therein and what claims are reasonably related thereto and developed by reasonable investigation of the charge.

In the charge, plaintiff alleges discrete acts of discrimination: (1) her 2008 transfer to "another section"; (2) the change of her flexible work schedule; and (3) the denial of developmental training and increased compensation. (Id.) Based on these allegations, plaintiff has clearly administratively exhausted her claim for associational discrimination under the ADA.

Yet, in her complaint, in addition to associational discrimination, she alleges harassment, (DE # 54, at 4), and contends in her memorandum in opposition to the motion for summary judgment that she has a viable hostile work environment claim, (DE # 72, at 1, 9-11).[2,3] According to plaintiff, the purported harassment consisted of: (1) plaintiff's never being provided with her job description despite her repeated requests; (2) plaintiff's supervisor constantly requesting that plaintiff sign a work plan; and (3) plaintiff's being "harassed about FMLA paperwork while she was in Pennsylvania caring for her mother." (Id. at 10.) The court agrees with NCDHHS that plaintiff has not administratively exhausted her hostile work environment claim. None of the alleged acts constituting harassment are set forth in plaintiff's charge of discrimination. Even liberally construing the charge, the factual allegations therein are not suggestive of a hostile work environment such that one could say the hostile work environment claim is reasonably related to the associational discrimination claim. For the same

---

[2] In her complaint, plaintiff also alleges "retaliation around July 2011." (DE # 54, at 4.) It does not appear that plaintiff is pursuing a retaliation claim. (See Mem., DE # 72, at 1 ("Plaintiff's complaint and attachments not only alleges [sic] discrimination but also that the Agency created a hostile work environment.").) Even if she is, however, the court would dismiss it for the same reason infra as the hostile work environment claim.

[3] In her memorandum in opposition to the summary judgment motion, plaintiff refers to race discrimination and points out that she is African-American. (DE # 72, at 8.) Plaintiff did not allege discrimination based on race in her charge of discrimination or her complaint, and she is precluded from bringing this new claim in response to the motion for summary judgment. See Fleetwood v. Harford Sys Inc., 380 F. Supp. 2d 688, 704 (D. Md. 2005) (granting summary judgment to the defendant on the plaintiff's ADA claim for harassment because the plaintiff had not alleged any facts in his complaint about harassment and recognizing "[i]t would be unfairly prejudicial to [the defendant] to permit the addition of a new claim after discovery has concluded and at the end of dispositive motions briefing").

5

reason, reasonable investigation of the alleged associational discrimination would not likely lead to the development of the hostile work environment claim. As such, plaintiff's charge of discrimination only encompasses her associational discrimination claim, and NCDHHS is entitled to summary judgment on plaintiff's hostile work environment claim.

With regard to plaintiff's associational discrimination claim, NCDHHS contends that it is entitled to summary judgment because plaintiff did not timely file her charge of discrimination. As recognized previously, plaintiff was required to file any charge of discrimination within 300 days after the alleged unlawful employment practice. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred."). Plaintiff filed her charge on 7 March 2012. Therefore, her charge is timely as to any purported discriminatory act which occurred in the period of 300 days prior to 7 March 2012, that is, from 12 May 2011 through 6 March 2012. Recognizing this, plaintiff attempts to rely on the continuing violation doctrine. (See Mem., DE # 72, at 10-11.) Under that doctrine, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Morgan, 536 U.S. at 105. Here, as discussed previously, plaintiff's charge of discrimination does not encompass a hostile work environment claim, and therefore, only discrete acts of discrimination which occurred from 12 May 2011 through 6 March 2012 are actionable.

Plaintiff's transfer from the WF/CPS team to the ICPC team occurred in 2008, and her change from an alternative work schedule to a traditional schedule (even assuming her supervisors required this change, (see Pl. Dep., DE # 72-6, at 112)) occurred in 2009 (effective

6

2010). These acts occurred outside the limitations period, and accordingly, any claim based on them is barred. Plaintiff's charge also refers to her being denied developmental training and higher compensation. Plaintiff testified that she was denied the ability to take grammar and Excel classes in 2012 (before she filed her charge of discrimination). (Pl. Dep., DE # 72-6, at 115.) The denial of that training is <u>within</u> the limitations period and is actionable in this proceeding. However, plaintiff has come forward with no evidence whatsoever from which one could reasonably infer that her mother's disability was a determining factor in the decision to not permit plaintiff to take classes,[4] which is an element of a *prima facie* case of discrimination under the ADA. See <u>Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.</u>, 53 F.3d 55, 58 (4th Cir. 1995) (setting forth the elements of a *prima facie* case of discrimination under the ADA, one of which is the adverse employment decision "occurred under circumstances that raise a reasonable inference of unlawful discrimination").

As for higher compensation, plaintiff testified that the transfer to ICPC was supposed to be a promotion. (Pl. Dep., DE # 72-6, at 68-70, 115-16.) Again, her transfer occurred in late 2008, and if she did not receive more compensation at that time, that act is outside the limitations period. To the extent plaintiff contends that the issue with her job description in August 2011 prevented her from receiving higher compensation and was discriminatory, that act would fall within the limitations period. However, as with the denial of training, there is no evidence linking plaintiff's failure to receive higher compensation with her mother's disability, and she cannot make out a *prima facie* case of discrimination based on that act.

In short, the court does not have subject matter jurisdiction over plaintiff's hostile work environment claim because she failed to exhaust her administrative remedies as to that claim.

---

[4] In fact, plaintiff testified that "those are the classes I was denied <u>because it interrupted the workload at ICPC</u>." (Pl. Dep., DE 72-6, at 115 (emphasis added).)

7

Her discrimination claim fails because the majority of the alleged discriminatory acts occurred outside of the limitations period. And, even considering some of those acts as falling within the limitations period, plaintiff cannot establish a *prima facie* case of discrimination.

### III. CONCLUSION

For the foregoing reasons, NCDHHS's motion for summary judgment is GRANTED. The Clerk is DIRECTED to enter judgment accordingly.

This 3 March 2016.

　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　W. Earl Britt
　　　　　　　　　　　　　　Senior U.S. District Judge